UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOY L. PRICE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant. | No. CV-05-0308-MWL<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on April 17, 2006. (Ct. Rec. 7, 9, 12). Plaintiff Joy L. Price ("Plaintiff") did not file a reply brief. Attorney Lora Lee Stover represents Plaintiff; Special Assistant United States Attorney David R. Johnson represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 3). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 12) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 9).

///

**JURISDICTION**

On April 26, 2002, Plaintiff applied for Disability Insurance Benefits ("DIB") alleging disability since February 1, 1999, due to multiple sclerosis ("MS") and fibromyalgia.[1] (Administrative Record ("AR") 75, 79-81, 102). The application was denied initially and on reconsideration. On October 21, 2003, Plaintiff appeared before Administrative Law Judge ("ALJ") Paul L. Gaughen, at which time testimony was taken from Plaintiff and vocational expert Tom L. Moreland. (AR 390-430). A supplemental hearing was held on June 8, 2004, at which time the ALJ took the testimony of medical expert James Haynes, M.D. (AR 431-462). On March 25, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 17-26). The Appeals Council denied a request for review on August 22, 2005. (AR 6-8). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on October 7, 2005. (Ct. Rec. 1).

It is undisputed that Plaintiff's insured status expired as of December 31, 1999. (Ct. Rec. 10, p. 4, n. 4; AR 111). A claimant seeking benefits under Title II must establish disability on or prior to the date last insured. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Therefore, Plaintiff was required to prove that she became unable to perform work prior to December 31, 1999. 20 C.F.R. § 404.1509. As noted by the Commissioner,

---

[1] Plaintiff previously applied for benefits in December 2000 (AR 75-77). The claim was apparently denied, and Plaintiff failed to appeal. At the administrative hearing on October 21, 2003, Plaintiff's counsel moved to reopen this application for adjudication on the merits. (AR 396-397). The ALJ granted Plaintiff's motion to reopen the application. (AR 397).

evidence of Plaintiff's condition after her date last insured is only relevant to the extent that it reflects on or relates back to her condition prior to her insurance lapsing. (Ct. Rec. 13, p. 7).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 53 years old on the date of ALJ Paul Gaughen's decision, has a high school education and has past relevant work as an owner/manager of an archery shop. (AR 18).

At the administrative hearing held on October 21, 2003, Plaintiff testified that there have been times since December of 1999 that she was unable to get out of bed due to pain. (AR 402). When feeling better, however, she stated she could go to the store and do the things that she needs to get done. (AR 402). Plaintiff indicated that she and her husband had moved in with their son and that her son helped her with grocery shopping, errands and driving. (AR 402-403). They moved in with their son because they could no longer afford the home where they had been living. (AR 404). She testified that her son's home is a tri-level home and that she has difficulty navigating the stairs. (AR 404). Plaintiff stated that, because of the symptoms associated with her MS, she is not always able to make it to the restroom which requires using the stairs. (AR 405).

While working in the family operated archery business in the 1990's, Plaintiff stated that fatigue and mental problems stemming from her MS created difficulty with performing her duties. (AR

408-409). She stated that as her symptoms increased, it got to the point where she could not do any of the book work or banking for the business. (AR 408). After the business closed, she did not attempt to secure employment elsewhere. (AR 409).

Plaintiff testified that the symptoms stemming from her MS included fatigue; memory loss; lack of concentration; difficulty speaking, or slurred speech; pain in her legs, knees, hips, chest, back, head, and total body; loss of balance; difficulty with sleep; double and blurred vision; skin irritations; and constipation. (AR 411-413).

When she goes grocery shopping, on occasion she will use a motorized cart. (AR 415). She also normally uses a cane when out in the public. (AR 415). With regard to daily activities, Plaintiff indicated that she is responsible for making her husband's breakfast and lunch and for doing the laundry and some dishes, but that her son does the vacuuming. (AR 415). Before moving in with her son, her husband did a majority of the household cleaning and vacuuming. (AR 416). She stated that she attends a monthly MS meeting and goes out to dinner twice a month with a couple of friends that also have been diagnosed with MS. (AR 416).

Plaintiff testified that she was originally diagnosed with MS in 1996, and, at that point, she was not able to lift a can of soda. (AR 417). She indicated it felt as if she had a stroke, with numbness from the chest down on one side and weakness on the other side. (AR 418). She stated that this continued for about a year. (AR 418). Although a doctor report indicated that Plaintiff was feeling substantially better in October of 1999,

Plaintiff explained that, "at that point, [she] was feeling so bad, when [she] did go on an anti-inflammatory [she] felt much better." (AR 419). Plaintiff further explained that she was previously at a stage where she could hardly function or even get out of bed. (AR 419).

Plaintiff testified that in 1999 she was physically and mentally unable to perform sedentary work activities. (AR 420). She indicated her concentration, memory and physical status prevented her from doing paperwork or even taking messages. (AR 420). She stated that, in 1999, she did not think she could pick up and carry 20 pounds and that she could sit for about five minutes and stand for little bit longer than five minutes before needing to sit. (AR 421). At the administrative hearing, the ALJ referenced an April 2000 physician report which indicated that Plaintiff was able to do some yard work, but Plaintiff indicated that, other than going out to the yard and pulling a couple of weeds, she does not remember performing yard work. (AR 422).

At the supplemental administrative hearing held on June 8, 2004, medical expert James M. Haynes, a neurologist, testified. (AR 446-458). Dr. Haynes indicated that there is no question that Plaintiff has suffered from MS since 1995 and, in terms of severity, it rated about a three on a scale of one to 10. (AR 446). Dr. Haynes also noted a diagnosis of chondrosarcoma at the base of the right side of Plaintiff's skull. (AR 446-447). However, Dr. Haynes felt that the two diagnoses did not have a very marked effect on Plaintiff and that neither met the severity level of a listings impairment. (AR 447-448). He testified that
///

Plaintiff's condition would not prevent her from performing sedentary or light exertion work, with the additional restriction of needing to avoid heat. (AR 451).

With regard to Plaintiff's MS, Dr. Haynes indicated that it appeared her early, aggressive treatment "worked" and that there had not been much progression. (AR 449-450). He opined that, if Plaintiff was going to reach a period of severe disability due to MS, she would have started down that road by now, and he did not believe that had occurred. (AR 450). Dr. Haynes stated that Plaintiff's symptoms were pretty mild. (AR 450).

At the administrative hearing held on October 21, 2003, vocational expert Tom L. Moreland also testified. (AR 422-427). However, neither Mr. Moreland, nor any other vocational expert, was called to give testimony at or following the supplemental hearing on June 8, 2004, despite the fact that additional testimony was elicited from medical expert Haynes at that time.

Mr. Moreland testified that Plaintiff's past relevant work consisted of work as a business owner/manager, light duty, skilled work; a general ledger bookkeeper, sedentary duty, skilled work; an accounts payable/accounts receivable clerk, sedentary duty, semi-skilled work; a billing clerk, sedentary duty, semi-skilled work; an archery repairer, light duty, semi-skilled work; a deli slicer/cutter, light duty, semi-skilled work; and a salesclerk, food, light duty, semi-skilled work. (AR 424).

Mr. Moreland testified that a hypothetical individual who is Plaintiff's age, with Plaintiff's work experience, with a high school education and with the ability to perform a full range of sedentary work could perform Plaintiff's past relevant work as a

billing clerk, an accounts payable person and a very light general ledger bookkeeper.  (AR 425).

Considering a second hypothetical with the same vocational profile and limited to sedentary work with further restrictions of frequent sit/stand alternating option, avoidance of industrial hazards, limited balancing tasks, and infrequent carrying, Mr. Moreland indicated that the frequent sit/stand option would be very disruptive and would likely preclude all work.  (AR 426-427).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are

denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past. If Plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental

impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the

evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since 1998. (AR 18). At step two, the ALJ determined that Plaintiff has the severe impairments of elapsing-remitting type MS, arthralgias (pain of the joints) which improved with anti-inflammatory medication, a right foot drop, right knee pain due to arthritis and marked cartilage thinning, and a brain tumor/right-sided chondrosarcoma, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 19-20).

The ALJ concluded that, prior to 1999, Plaintiff retained the residual functional capacity ("RFC") to perform at the sedentary to light level of exertion. (AR 22). Specifically, while Plaintiff could stoop and crouch, she had postural limitations for only occasional climbing, balancing, kneeling and crawling and, with normal breaks and at two-hour intervals, she had a six-hour sitting capacity, two-hour standing and walking capacity and lifting capacity up to 20 pounds occasionally and 10 pounds frequently. (AR 22). The ALJ also noted that Plaintiff had not alleged, and there was no indication in the record, that she suffers from any significant mental or cognitive functional limitations. (AR 22).

At step four of the sequential evaluation process, the ALJ found that Plaintiff was not able to perform the "full functions" of her past work. (AR 23). However, the ALJ determined that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which she could perform despite her limitations. (AR 23-24). Examples of such jobs included work as an accounts payable/receivable clerk, a general ledger/bookkeeper and a billing clerk. (AR 24). Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 24).

///
///
///

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. The ALJ's RFC determination was erroneous, because he failed to incorporate Plaintiff's mental impairments (including memory loss, pain, fatigue and effects of her medication) and failed to incorporate the medical expert's finding that Plaintiff would need to avoid heat;

2. The vocational expert's testimony could not stand as support for the ALJ's decision; and

3. The ALJ erred by finding Plaintiff not credible.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Plaintiff's Credibility**

Plaintiff argues that the ALJ's opinion that Plaintiff is not fully credible is not properly supported. (Ct. Rec. 10, pp. 13-14). Plaintiff asserts that her testimony should be credited because no clear and convincing reasons were provided to discredit her testimony. (Ct. Rec. 10, p. 14). The Commissioner responds that the ALJ properly discredited Plaintiff's testimony that alleged greater limitations than what the ALJ assessed in his RFC finding. (Ct. Rec. 13, p. 8).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific

cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ determined that Plaintiff's subjective allegations regarding her limitations prior to 1999 were not supported by the evidence of record and were not totally disabling. (AR 21-22, 25). In support of this finding, the ALJ indicated as follows: (1) Plaintiff's credibility was undermined by the inconsistency between her testimony regarding her condition prior to December 1999 and the clinical records of her condition at that time; (2) treatment records prior to December 1999 demonstrate that Plaintiff did experience pain, but that her symptoms improved with treatment;[2] and (3) Plaintiff's sparse medical treatment history is inconsistent with her expressed disabling symptoms and functional limitations. (AR 21). The ALJ also noted that, while

---

[2] The ALJ noted that "while she has reported symptoms of fatigue, light sensitivity, muscle/joint cramping/stiffness, and headaches, her symptoms of multiple sclerosis have been well-controlled and stable during her insured period, and she was specifically noted to remain quite functional." (AR 21).

Plaintiff testified to a number of significant limitations, the medical expert, Dr. Haynes, testified that Plaintiff's examinations were described as pretty normal and her symptoms were pretty mild. (AR 21, 449-450). Dr. Haynes opined that Plaintiff's condition would not prevent her from performing sedentary or light exertion work prior to the expiration of her insured status in December of 1999. (AR 21, 451).

As noted above, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes*, 881 F.2d at 751. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. *Allen*, 749 F.2d at 579. It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.

After reviewing the record, the undersigned judicial officer finds that the ALJ's rationale for discounting Plaintiff's subjective complaints provide sufficient support for the ALJ's conclusion that Plaintiff was not entirely credible. Accordingly, the undersigned finds that the ALJ did not err by concluding that Plaintiff's subjective complaints regarding the extent of her functional limitations were not fully credible in this case. (AR 21-22).

**B. RFC**

Plaintiff asserts that the ALJ's RFC determination was erroneous, because he failed to incorporate Plaintiff's complaints of mental limitations and Plaintiff's assessed need to avoid heat. (Ct. Rec. 10, p. 11).

///

RFC is defined as the most one can still do despite the individual's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making the RFC determination, the ALJ considers Plaintiff's symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence of record. The ALJ also considers the opinions of acceptable medical sources which reflect their judgment about the nature and severity of Plaintiff's impairments and resulting limitations.

Plaintiff contends that the ALJ did not fully take into consideration her complaints of memory loss, pain, fatigue and the effects of her medication. (Ct. Rec. 10, p. 11). The ALJ specifically held that, "[a]s for any mental health/psychological impairment conditions or limitations, the claimant has not alleged, and there has been no indication that the claimant suffers from any significant mental or cognitive functional limitation." (AR 22). The ALJ noted that Plaintiff experienced aches and pains but that these symptoms improved with treatment. (AR 21). The ALJ also indicated that Plaintiff's alleged fatigue was well-controlled and stable during her insured period. (AR 21). Furthermore, the ALJ properly discounted Plaintiff's subjective complaints regarding the extent of her functional limitations. *See supra*. Accordingly, the ALJ was entitled to give little weight to Plaintiff's psychological complaints.

Nevertheless, the weight of the evidence of record supports the ALJ's conclusion that Plaintiff was not restricted by mental impairments. (AR 22). Reviewing physician John McRae, Ph.D., indicated on March 23, 2001, that, with regards to the time period

of February 1999 to December 1999, the evidence was insufficient to establish a mental diagnosis or any limitations stemming therefrom. (AR 198). Plaintiff additionally did not inform Drs. Stevenson and Thrower that she had any problems with memory or side-effects from her medications. (AR 175-177, 184). On June 15, 1999, Dr. Thrower noted that Plaintiff was on Avonex immunomodulatory therapy, had received a total of 12 doses, and was doing well with the medication. (AR 184). On October 25, 1999, Dr. Stevenson indicated Plaintiff was feeling substantially better on Voltaren. (AR 179). On April 10, 2000, Dr. Stevenson indicated that Plaintiff had "done quite well" recently and had been using Voltaren on a rare, occasional basis with good response and no adverse side effects. (AR 180).

While a nurse noted on December 1, 1999, that Plaintiff presented with a complaint that her memory was bad (AR 185), Plaintiff made no such complaint during a followup exam with Dr. Thrower six months later (AR 186) nor during a visit with that same nurse in November of 2000 (AR 190).

The ALJ's RFC finding with regard to Plaintiff's alleged mental impairments and/or limitations is supported by the weight of the record evidence. The ALJ correctly did not include limitations related to memory loss or medication side-effects and properly accommodated her pain and fatigue complaints in his ultimate RFC finding by limiting Plaintiff to the performance of sedentary to light exertion work.

As noted above, Plaintiff also argues that the ALJ failed to address the medical expert's finding that Plaintiff's limitations include the need to avoid hot temperatures. (Ct. Rec. 10, p. 11).

However, as noted by the Commissioner, there was no need to include a limitation to avoid extreme heat as Dr. Haynes opined because Dr. Haynes' opinion was given as pertaining to MS patients in general which included heat and heavy physical labor restrictions. (AR 451). Plaintiff's physicians, Drs. Stevenson and Thrower, each noted that, with regards to Plaintiff's condition, the warm summer months actually helped her feel better. (AR 175, 184). Moreover, the ALJ's step five determination identified jobs noted by the vocational expert (accounts clerk, bookkeeper, and billing clerk) which did not include the potential of exposure to extreme heat. Each of these positions are performed indoors in an office setting. "In general, few occupations in the unskilled sedentary occupation base require work in environments with . . . extreme heat." SSR 96-9p. The Court agrees with the Commissioner that any error related to the absence of an extreme heat limitation is harmless and not a basis for remanding this case. An error is harmless when the correction of that error would not alter the result. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995). An ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (*citing Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

Based on the foregoing, the undersigned finds that the ALJ's RFC determination was in accord with the substantial weight of the record evidence and free of error.

**C. Vocational Expert Testimony**

Plaintiff also asserts that the ALJ erred by relying on the vocational expert's testimony in this matter. (Ct. Rec. 10, pp.


11-13).  Specifically, Plaintiff complains that the ALJ failed to elicit vocational expert testimony after receiving testimony from the medical expert and failed to present a hypothetical to a vocational expert which included all of Plaintiff's functional limitations.  (Ct. Rec. 10, pp. 11-13).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Therefore, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that Plaintiff can perform despite her identified limitations only after Plaintiff has established a prima facie case of disability by demonstrating she cannot return to her former employment.  *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986).  The ALJ can satisfy this burden by either (1) applying the grids[3] or (2) taking the testimony of a vocational expert.  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

---

[3] The grids are an administrative tool the Commissioner may rely on when considering claimants with substantially uniform levels of impairment. *Burkhart,* 856 F.2d at 1340 (*citing Derosiers v. Secretary of Health and Human Serv.*, 846 F.2d 573, 578 (9th Cir. 1988).

As determined above, the weight of the record evidence in this case supports the ALJ's RFC finding which does not include mental limitations or a need for Plaintiff to avoid extreme heat. *See supra*. The ALJ appropriately concluded that Plaintiff retained the RFC to perform at the sedentary to light level of exertion with certain postural limitations. (AR 22). At the administrative hearing held on October 21, 2003, the ALJ presented a hypothetical to the vocational expert which incorporated Plaintiff's profile and this RFC. Since there was no basis for the ALJ to present other limitations other than those posed to the vocational expert in this case, the ALJ was justified in relying on the vocational expert's response in formulating his decision in this matter. The vocational expert testified that the hypothetical individual could perform Plaintiff's past relevant work as a billing clerk, an accounts payable clerk and a very light general ledger bookkeeper. (AR 425). At step five of the sequential evaluation process, the ALJ found that, within the framework of the Grids and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which Plaintiff could perform despite her limitations. (AR 23-24). Examples of such jobs included work as an accounts payable/receivable clerk, a general ledger/bookkeeper and a billing clerk. (AR 24).

The ALJ presented a hypothetical to the vocational expert which included all of Plaintiff's functional limitations; therefore, contrary to Plaintiff's assertions, the ALJ did not err by relying on the vocational expert's testimony. Accordingly, the

undersigned finds that there was no error with regard to the ALJ's step five determination in this case.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is able to perform work at the sedentary to light level of exertion with certain postural limitations (AR 22), including work as an accounts payable/receivable clerk, a general ledger/bookkeeper and a billing clerk, work existing in sufficient numbers in the national economy, is supported by substantial evidence and free of legal error.  Plaintiff is thus not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 9**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 12**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___18th___ day of July, 2006.

                                        s/Michael W. Leavitt
                                        MICHAEL W. LEAVITT
                                UNITED STATES MAGISTRATE JUDGE